# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# Roanoke Division

| | |
|---|---|
| LISA G. WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 7:15-cv-00224-MFU |
| MOUNTAIN VIEW LAWN CARE LLC ) | |
| ) | |
| and ) | |
| ) | |
| U.S. LAWNS, INC., ) | |
| ) | |
| Defendants. ) | |

## U.S. LAWNS, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

Defendant U.S. Lawns, Inc. ("U.S. Lawns") submits this brief pursuant to the Court's August 17, 2015 Order as amended on November 3, 2015, requiring the parties to file supplemental briefs addressing whether the defendants individually have the requisite number of employees to be subject to Title VII, whether U.S. Lawns and Defendant Mountain View Lawn Care, LLC ("Mountain View") are joint or integrated employers under applicable law, and, if so, whether the defendants' employees can be aggregated for the purpose of meeting Title VII's numerosity requirement. (ECF Nos. 26 and 34.)

It is clear from the indisputable facts that U.S. Lawns never employed Plaintiff, Lisa Wright, and it was not involved in any way in recruiting, hiring or firing her. She was recruited, hired, managed, paid and fired solely by her actual employer, Mountain View. U.S. Lawns is merely a franchisor that allows franchisees to use the U.S. Lawns logo and brand, subject to certain standards, and take advantage of some training and other resources made available to

franchise owners. Mountain View is one such franchisee. Accordingly, as discussed in more detail below, U.S. Lawns is not a joint employer or integrated enterprise with Mountain View, and it is not subject to Plaintiff's Title VII claims.

## SUPPLEMENTAL STATEMENT OF FACTS

U.S. Lawns incorporates by reference the statement of facts contained in the Memorandum in Support of its Motion to Dismiss, dated July 20, 2015. (ECF No. 10.) As made clear in the Declaration supporting that Motion, U.S. Lawns was not Plaintiff's employer: it did not recruit or hire her, manage her performance, pay, or terminate her. (ECF No. 10-1 at ¶¶ 4, 6.) All of that was done by Mountain View. Indeed, U.S. Lawns had no involvement with Plaintiff's employment whatsoever. (ECF No. 10-1 at ¶ 6.) The two depositions and other discovery the Court allowed Plaintiff to take to explore the relationship between U.S. Lawns and Mountain View confirm that theirs is merely an arm's length franchisor/franchisee relationship.

U.S. Lawns, is a wholly-owned subsidiary of ValleyCrest Group and is headquartered in Orlando, Florida. (Dolan Dep. 6:8-15, 7:1-3.)[1] Ken Hutcheson is the President of U.S. Lawns. (Dolan Dep. 6:19-21.) During the relevant timeframe, U.S. Lawns had approximately 56 employees, all but three of whom worked in Florida. (Dolan Dep. 8:8-15, 9:5-10.) The other three employees were Regional Franchise Advisors with home offices in Pennsylvania, Mississippi, and Illinois. (Dolan Dep. 9:11-12.) At all relevant times, the Regional Franchise Advisor assigned to support Mountain View maintained a home office in Illinois. (Dolan Dep. 9:13-16; Border Dep. 42:2-7.)[2] The Regional Franchise Advisor's provides periodic business

---

[1] The relevant pages of the Deposition of Pamela Dolan ("Dolan Dep.") are attached at Exhibit 1.
[2] The relevant pages of the Deposition of Jess V. Border ("Border Dep.") are attached at Exhibit 2.

support and advice to their assigned franchisees, as needed, and do approximately annual evaluations of the franchisee's business. (Dolan Dep. 13:4-11, 32:2-16; Border Dep. 42:8-12.).

Mountain View is a franchisee of U.S. Lawns that operates in Roanoke, Virginia. (Border Dep. 9:12-14, 40:14-16.) At all relevant times, Mountain View had approximately 6 or 7 employees. (Border Dep. 21:2-7.) From mid-2010 until June 2014, Jess Border was the sole owner of Mountain View. (Border Dep. 12:24-13:6, 18:1-2.) In this role, Mr. Border wore "all hats" as Mountain View's General Manager and made all hiring and firing decisions. (Border Dep. 18:4-6, 36:9-11, 43:22-44:2.) Mr. Border never delegated his hiring and firing authority during this time. (Border Dep. 43:22-44:8.) As General Manager, Mr. Border also handled human resources matters for Mountain View. (Border Dep. 24:11-13). He contracted with an outside party (not U.S. Lawns) to handle Mountain View's payroll. (Border Dep. 24:14-15.) In June 2014, Mr. Border transferred some of his ownership interest in Mountain View to William Turley, Terry Myles, and Dave Cichocki. (Border Dep. 11:8-24.) Shortly thereafter, Mr. Myles became the General Manager and took over all of Mr. Border's responsibilities. (Border Dep. 23:5-7.)

U.S. Lawns, as a franchisor, required its franchisees, including Mountain View, to maintain certain brand standards, such as uniform vehicle logos and employee attire. (Dolan Dep. 29:8-14.) However, U.S. Lawns did not furnish equipment and uniforms to Mountain View. (Dolan Dep. 28:17-19, 29:15-18.) Mountain View was ultimately in control of what equipment and uniforms it wanted to purchase. (Border Dep. 31:9-11.)

U.S. Lawns does not control or have input into whom its franchisees employ and it has never been involved in recruiting, hiring, directing, scheduling, paying, training, disciplining, or terminating Mountain View's employees. (Dolan Dep. 11:11-25, 18:19-22.) As part of the

3

support U.S. Lawns provides its franchisees, it made available to Mountain View employee development templates, recruiting resources, and contact information for vendors who could assist them, but did not require Mountain View to use any of these resources. (Dolan Dep. 10:21-11:10, 34:11-22; Border Dep. 37:11-14.) U.S. Lawns provided training to franchise owners, such as Mr. Border, but does not provide training to Mountain View's employees. (Dolan Dep. 14:12-19; Border Dep. 33:3-5.)

## ARGUMENT

### I. U.S. Lawns Was Not a Joint Employer of Plaintiff.

Earlier this year, in *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 414 (4th Cir. 2015), the Fourth Circuit set forth nine factors to be assessed when determining whether an individual was jointly employed. In many ways, the *Butler* case is the reverse of this case. In *Butler* there was no question that the plaintiff was an employee of the temporary staffing agency, ResourceMFG, that recruited, hired and paid her; the question was whether the client to whom she was assigned by the staffing agency and for whom she worked daily, Drive Automotive, was her joint employer. The Court held that it was because the staffing company and Drive Automotive:

> … *each* exercised control over various aspects of [plaintiff's] work. For example, [plaintiff] wore ResourceMFG's uniform, was paid by ResourceMFG, and parked in a special ResourceMFG lot. ResourceMFG also had ultimate responsibility for issues related to discipline and termination. Drive, however, determined [plaintiff's] work schedule and arranged portions of [plaintiff's] training. Drive employees supervised [plaintiff] while she worked on the factory floor. . .

*Id.* at 406-07 (emphasis supplied.) Unlike in *Butler*, however, in this case only Mountain View exercised control over Plaintiff's employment. U.S. Lawns did not hire or pay her and did not

4

manage her work and was not involved in any aspect of her employment. It was therefore not Plaintiff's joint employer.

In *Butler*, the Court of Appeals adopted "a new set of factors for courts in this Circuit to use in assessing whether an individual is jointly employed by two or more entities:

    (1)    authority to hire and fire the individual;
    (2)    day-to-day supervision of the individual, including employee discipline;
    (3)    whether the putative employer furnishes the equipment used and the place of work;
    (4)    possession of an responsibility over the individual's employment records, including payroll, insurance, and taxes;
    (5)    the length of time during which the individual has worked for the putative employer;
    (6)    whether the putative employer provides the individual with formal or informal training;
    (7)    whether the individual's duties are akin to a regular employee's duties:
    (8)    whether the individual is assigned solely to the putative employer; and
    (9)    whether the individual and putative employer intended to enter into an employment relationship."

*Id.* at 415. In analyzing these factors, "[c]ourts should be mindful that control remains the principal guidepost for determining whether multiple entities can be a plaintiff's joint employers." *Id.* at 414-15.

Many of the factors identified by the Court of Appeals implicitly contemplate a staffing agency/client context where the "actual" employer hires and pays the employee, but the employee performs her work for the "putative" employer. So, for example, factor 6 – the length of time during which the individual has worked for the putative employer – presumably would be relevant where a long-time staffing agency employee was assigned to the putative employer for only a day or two. Consequently, the nine factors articulated by our Court of Appeals do not

5

all neatly fit the situation in this case. Nonetheless, it is clear that *none* of them supports the conclusion that U.S. Lawns was a joint employer of Plaintiff.

As to factor 1, U.S. Lawns did not have the authority to hire or fire Plaintiff; only Mountain View did. At the time of Plaintiff's hire, Mr. Border made all hiring and firing decisions for Mountain View. After June 2014, these duties were handled by Mountain View's new General Manager, Mr. Myles. U.S. Lawns was not involved.

With respect to factor 2, U.S. Lawns did not supervise Plaintiff on a daily basis (or at all). Prior to June 2014, Mr. Border was the General Manager of Mountain View. In that role, he wore "all hats" and ran the day-to-day business of Mountain View. In June 2014, Mr. Border transferred part of his 100% ownership interest in Mountain View to Mr. Turley, Mr. Myles, and Mr. Cichocki. At that time, Mr. Myles took over General Manager responsibilities for Mountain View. It was Mr. Myles who changed Plaintiff's employee status and disciplined her.[3] As Plaintiff acknowledges, Mr. Myles terminated her employment. (ECF No. 1 at ¶ 16.) U.S. Lawns was not involved in any of those decisions. At no point did U.S. Lawns "recruit, screen, hire, direct, schedule, set hours, compensation or benefits, pay, train beyond limited training related to the U.S. Lawns system of business provided to franchisee owners and individuals, discipline, or terminate its franchisees' employees." (ECF No. 10-1 at ¶ 4.) Rather, Mr. Myles was responsible for these actions.

Regarding factor 3, U.S. Lawns did not furnish any of the equipment that Plaintiff used during her employment with Mountain View. While U.S. Lawns provides its franchisees with preferred providers, it is the franchisees themselves that acquire equipment for their businesses

---

[3] *See* Plaintiff's personnel documents produced by Mountain View in response to Plaintiff's Document Request No. 2 (bates labeled Mountain View 0273-0279), attached as Exhibit 3.

and uniforms for their employees. Plaintiff used equipment provided to her by Mountain View. U.S. Lawns did not furnish her any equipment to use in her job. (ECF No. 10-1 at ¶ 7.)

As to factors 4, 5, and 6, U.S. Lawns had no involvement with any aspect of Plaintiff's employment. Therefore, U.S. Lawns did not have possession of or responsibility over Plaintiff's employment records (factor 4). Mountain View's General Manager was responsible for running the business and Mountain View has whatever employment records exist with respect to Plaintiff's employment.[4] She never worked for U.S. Lawns (factor 5), and U.S. Lawns did not provide Plaintiff with formal or informal training (factor 6).

In addition, Plaintiff worked as a landscaper. (ECF No. 1 at ¶ 7.) These duties are not akin to the duties of U.S. Lawns' employees. U.S. Lawns is in the franchise business. Its employees are involved in selling franchises and providing services to its franchisees. It does not maintain lawns and none of its employees work as a landscaper (factor 7). Lastly, Plaintiff was never assigned to work at U.S. Lawns (factor 8) and, since U.S. Lawns did not have any documents in its possession regarding Plaintiff's employment, it certainly did not intend to enter into an employment relationship with her (factor 9).

In sum, none of the *Butler* factors support a finding that U.S. Lawns was Plaintiff's joint employer. Mountain View - - and only Mountain View - - made decisions regarding Plaintiff's hiring, firing, and day to day work, provided Plaintiff with equipment and uniforms, and it was

---

[4] U.S. Lawns has no responsive documents in its possession, custody, or control concerning Plaintiff's employment. *See* Response to Plaintiff's Document Request No. 2, attached as Exhibit 4. Mountain View, on the other hand, produced several documents concerning Plaintiff's employment. *See* Exhibit 3. Further, the forms (personnel action, counseling verification, and notice of employee separation) and payment record produced by Mountain View clearly informed Plaintiff that she was employed by "Mountain View Lawn Care, LLC d.b.a U.S. Lawns" and/or that Mountain View "is an independently owned and operated enterprise and is a separate and distinct entity from the U.S. Lawns Franchisor." *Id.*

solely responsible for Plaintiff's employment records and all other aspects of her employment. It is, in short, indisputable that U.S. Lawns is not a joint employer of Plaintiff.

## II. Even If U.S. Lawns Were a Joint Employer, The Total Aggregated Number of Employees Does Not Meet Title VII's Numerosity Requirement.

U.S. Lawns is not a joint employer (nor as shown in Section III below, an integrated employer) of Plaintiff. But, even if Mountain View and U.S. Lawns were her joint employers, Title VII would not apply because only those employees directly employed by Mountain View and those employees jointly employed by both Mountain View and U.S. Lawns should be aggregated (counted) for purposes of determining if Title VII's 15 employee threshold is met. *See Hutchinson v. Am. Family Mut. Ins. Co.*, 2013 U.S. Dist. LEXIS 46897, at *30 (D. Ariz. April 1, 2013) (relying on reasoning from Sixth Circuit and Second Circuit opinions to reach this holding). All of the employees of both entities should not be combined. *Id.* Instead, Mountain View's employee total should only be supplemented by the number of employees jointly employed by Mountain View and U.S. Lawns. *See id.*

Here, Plaintiff was employed by Mountain View, which only had approximately 6-7 employees during the relevant timeframe. While aggregation is appropriate where both entities are joint employers (which they are not), there is no evidence that any of U.S. Lawns' approximately 56 employees were jointly employed by Mountain View. In other words, Mountain View did not exercise any control over U.S. Lawns' employees. Thus, the total aggregated number of employees remains at approximately 6-7. Since the Title VII fifteen-employee threshold for liability has not been met, U.S. Lawns cannot be liable to Plaintiff under Title VII, even if it was her joint employer.

8

### III. U.S. Lawns and Mountain View are Not A Single, Integrated Employer

The "integrated employer" doctrine is distinct from the joint employment doctrine. The question under the integrated employer doctrine is whether two discrete corporate entities may be treated as a single, integrated employer for purposes of Title VII liability. *See Butler*, 793 F.3d at 408 n.3. In making that determination, four factors should be considered: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *Hukill v. Auto Care, Inc*, 192 F.3d 437, 442 (4th Cir. 1999). The "most critical factor" under *Hukill* is control of labor relations. *Id.*

In *Hukill*, the plaintiff argued that eight automotive service stations were a single, integrated employer in an attempt to meet the numerosity requirement of the Family and Medical Leave Act. The Fourth Circuit analyzed each factor, and held that the stations were not an integrated employer because three of the four factors weighed heavily against an opposite finding. *Id.* at 444.[5] Notably, with respect to interrelation between operations, the court held that the stations were not integrated because they operated separate locations, purchased goods separately, did not share office space, and were not managed by the same person every day. *Id.* at 443. The court also held that there was no centralized control of labor relations where one company had no power to hire, fire, or supervise the employees at its "client" stations and no power to control the work schedules of such employees. *Id.* at 444. Finally, the court held that the stations did not have a sufficient degree of common ownership where they had common, but not identical ownership (i.e., the president owned 100% of one station and 50% of the other stations). *Id.*

---

[5] The court held that the first factor, common management, favored neither party because even though each service station had its own manager, for a short period, an employee of one station was the general manager of all of the stations. *Id.* at 443.

Similarly here, an analysis of the four factors demonstrates that U.S. Lawns and Mountain View are not an integrated employer. First, U.S. Lawns and Mountain View do not have common management. Mr. Border, and later, Mr. Myles controlled the day-to-day operations of Mountain View. Although Mountain View could contact a U.S. Lawns Regional Franchise Advisor for periodic support and advice as needed, the Regional Franchise Advisor did not control the daily operations of Mountain View. Further, "no officers or directors of [Mountain View] are officers or directors of [U.S. Lawns]." *See McFarland v. Breads of the World, LLC*, 2011 U.S. Dist. LEXIS 20703, at *23 (S.D. Oh. Feb. 1, 2011) (analyzing the same four factors and holding that there is a lack of common management between a Panera franchisee and Panera, LLC).

Second, U.S. Lawns and Mountain View have an arm's length franchisor/franchisee relationship. They do not have interrelated operations. They operate in separate locations and do not share office space – Mountain View operates in Roanoke, Virginia and U.S. Lawns operates in Orlando, Florida. The U.S. Lawns Regional Franchise Advisor assigned to support Mountain View maintains an office in Illinois, not Roanoke, Virginia. Mountain View purchases equipment and uniforms independent of U.S. Lawns. Also, although U.S. Lawns maintains brand standards that Mountain View is required to adhere to, such logo usage and employee uniforms, "[c]ourts have routinely found this type of evidence of standardization insufficient to satisfy the showing of interrelated operations and control over labor relations required by the single employer test." *Baetzel v. Home Instead Senior Care*, 370 F. Supp. 2d 631, 640 (N.D. Oh. 2005) (citing cases from the Tenth Circuit and district courts in Oklahoma and Nevada).

Third, the most critical factor – centralized control of labor relations – is wholly absent here. Mountain View alone had the power to hire, fire, and supervise its employees. U.S. Lawns

had no involvement in Mountain View's personnel decisions and, in fact, did had no role in the recruiting, hiring, compensation, performance management, or termination of Mountain View's employees. Indeed, it was not even aware of who Mountain View employed at any given time. "Outside of the necessary control over conformity to standard operational details inherent in many franchise settings," U.S. Lawns "did not have the control over [the franchisee] necessary to make it liable as an employer of [the franchisee's] employees under Title VII." *See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991); *Lockard v. Pizza Hut*, 162 F.3d 1062 (10th Cir. 1998) (holding that where a franchisor does not participate in hiring and firing decisions, it is not an employer under Title VII).

Further, although U.S. Lawns encourages franchisees to use its training materials and personnel policies and manuals for employees, it is important to "distinguish between recommendations and requirements" when assessing the labor relations factor. *Matthews v. Int'l House of Pancakes, Inc.*, 597 F. Supp. 2d 663 (E.D. La. 2009) (quoting *Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 87-90 (E.D.N.Y. 2000)). *See also Baetzel*, 370 F. Supp. 2d at 642 ("a parent's broad general policy statements regarding employment matters are not enough to make the required showing of centralized control over labor relations.") (quotations and citation omitted). U.S. Lawns, "at most . . . exercised the type of minimum control over [the franchisee's] labor relations that one would expect of a franchisor. Such control is legally insufficient to prove that [the franchisee and the franchisor] operated as a single employer." *McFarland*, 2011 U.S. Dist. LEXIS 20703, at *30.

Finally, there is no common ownership between U.S. Lawns. Mountain View was solely owned by Mr. Border until June 2014, when it became owned by Messrs. Border, Myles, Turley, and Cichocki. None of these individuals have any ownership interest in U.S. Lawns, which is

11

owned by ValleyCrest Group.  Conversely, U.S. Lawns does not own an ownership interest in Mountain View.  *See e.g., McFarland*, 2011 U.S. Dist. LEXIS 20703, at *25.  Additionally, only Mountain View's owners made financial decisions for the company, including what equipment and uniforms to buy and what outside companies to use to process payroll.

In sum, all four factors support a finding that Mountain View and U.S. Lawns do not operate as a single, integrated employer.  Therefore, U.S. Lawns was not Plaintiff's employer for Title VII purposes and cannot be subjected to Title VII liability as part of an integrated enterprise with her actual employer, Mountain View.  Her complaint against U.S. Lawns should be dismissed in its entirety.

## CONCLUSION

For the reasons stated above and in the previously filed memorandum in support of its Motion to Dismiss, U.S. Lawns respectfully requests that the Court grant its Motion to Dismiss.

Dated:  December 18, 2015  	Respectfully submitted,

	U.S. LAWNS, INC.,

	By its attorneys,

	/s/  David Barmak
	David Barmak (VSB# 15853)
	Alta M. Ray (VSB# 87023)
	MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
	& POPEO, P.C.
	701 Pennsylvania Ave. NW, Suite 900,
	Washington, D.C. 20004
	Tel: (202) 585-3507
	Fax: (202) 434-7400
	DBarmak@mintz.com
	AMRay@mintz.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of December 2015, I caused the foregoing Supplemental Brief in Support of Motion to Dismiss to be served via the ECF system on counsel as follows:

> Terry N. Grimes
> Brittany M. Haddox
> TERRY N. GRIMES, ESQ., P.C.
> 320 Elm Street
> Roanoke, VA 24016
> tgrimes@terryngrimes.com
> bhaddox@terryngrimes.com
>
> *Counsel for Plaintiff*
>
> Thomas M. Winn III
> Thomas R. Bagby
> Michael Gardner
> Woods Rogers PLC
> 10 South Jefferson Street
> Suite 1400
> Roanoke, VA 24011
> winn@woodsrogers.com
> bagby@woodsrogers.com
> mgardner@woodsrogers.com
>
> *Counsel for Mountain View Lawn Care LLC*

                                          /s/ David Barmak
                                          David Barmak

44577819v.2