CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 11 2016
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

LISA G. WRIGHT, )
)
Plaintiff, )
) Civil Action No. 7:15-cv-00224
v. )
)
MOUNTAIN VIEW LAWN CARE, LLC, et al., ) By: Hon. Michael F. Urbanski
) United States District Judge
Defendants. )
)

## MEMORANDUM OPINION

This employment action is before the court on the motion to dismiss filed by defendant U.S. Lawns, Inc., pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 9). U.S. Lawns argues that the complaint filed by plaintiff Lisa G. Wright fails to allege facts sufficient to establish that it was her employer for purposes of Title VII. Following a hearing on August 17, 2015, the court ordered a period of discovery. The parties filed supplemental briefs and supporting evidence and appeared before the court on March 9, 2016 to present additional argument.

Both parties have presented evidence outside of the pleadings in conjunction with this motion. As such, the court will convert it from a motion to dismiss to a motion for summary judgment, as required by Rule 12(d). Having carefully considered the evidence and arguments raised by counsel in multiple briefs and at two separate hearings, the court concludes that U.S. Lawns is not Wright's statutory employer under Title VII. Applying the factors outlined by the Fourth Circuit in Butler v. Drive Automotive Industries of America, Inc., 793 F.3d 404 (4th Cir. 2015), the court finds that U.S. Lawns and Mountain View were not Wright's joint employers for purposes of Title VII liability. Nor can U.S. Lawns be held liable under the single, integrated employer theory of liability or an apparent agency theory. U.S. Lawn's motion therefore will be **GRANTED** and Wright's claims against U.S. Lawns **DISMISSED**.

I.

Plaintiff Lisa Wright filed her complaint on May 11, 2015, alleging gender discrimination, harassment and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., against Mountain View Lawn Care, LLC and U.S. Lawns, Inc. Wright alleges she began work "for US Lawns (plaintiff is not certain of the precise legal name of her employer or the legal relationship, if any, between Mountain View Lawn Care LLC and US Lawns, Inc.)" in March 2014 as a landscaper. Compl., ECF No. 1, at ¶ 7. She further alleges that:

> (6) On information and belief, defendant Mountain View Lawn Care LLC and US Lawns, Inc. are corporate entities doing business in the western district of Virginia and elsewhere. At all times material hereto defendants operated as a "joint employer" under federal law and are and were a "person" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(a). On information and belief, at all times material hereto defendant is and was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(b), that is, at all times material hereto defendant is and was a person engaged in an industry affecting commerce which had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks during the years of plaintiffs employment or the preceding calendar year.

Id. at ¶ 6. Wright claims that management told her she was employed by U.S. Lawns, id. at ¶ 9, and she attaches as an exhibit to the complaint a letter dated May 30, 2014, written on U.S. Lawns' letterhead, stating Wright "has been employed with U.S. Lawns since 3/25/14," id. at ¶ 9, Ex. 1.

U.S. Lawns disputes that it is Wright's employer, however, arguing she was employed by defendant Mountain View Lawn Care, LLC, an independently-owned franchise of U.S. Lawns operating out of Roanoke, Virginia, that does business as U.S. Lawns of Roanoke. U.S. Lawns filed a motion to dismiss Wright's complaint and attached to its brief the Declaration of Pam Dolan, Business Management Director at U.S. Lawns, who attests that Wright "has never been an employee of U.S. Lawns. She worked solely in Roanoke, Virginia for Mountain View and was supervised by Mountain View employees and members." Dolan Decl., ECF No. 10-1, at ¶ 6. Wright thereafter

moved to compel discovery or, in the alternative, to strike Dolan's declaration from the record. See ECF No. 15. Following a hearing held on August 17, 2015, the court entered an order allowing Wright to conduct limited discovery on the issue of the corporate relationship between Mountain View and U.S. Lawns and whether there is any factual basis in this case to support a joint employer or single, integrated employer theory of liability.

Wright and Mountain View subsequently reached a resolution of plaintiff's claims against that defendant.[1] The only issue left to resolve, therefore, is whether U.S. Lawns was Wright's employer within the meaning of Title VII. To that end, both U.S. Lawns and Wright have submitted supplemental briefs and evidence for the court's consideration and appeared for a supplemental hearing on March 9, 2016.

Wright asserts that because she has alleged Mountain View and U.S. Lawns were her joint employers, she has met the requirements of Title VII. Wright points to information provided in discovery that shows U.S. Lawns and Mountain View maintain a franchisor / franchisee relationship. According to Wright, the franchise agreement reveals that U.S. Lawns provides "extensive support" to Mountain View, Pl.'s Suppl. Br., ECF No. 37, at 14, and exerts sufficient control over the franchisee such that it should be considered a joint employer under the test outlined in Butler v. Drive Automotive Industries of America, Inc., 793 F.3d 404 (4th Cir. 2015). In the alternative, Wright argues that U.S. Lawns and Mountain View should be considered a single, integrated employer for jurisdictional purposes, or that U.S. Lawns should be held liable under an apparent agency theory.

U.S. Lawns counters that it is simply a franchisor that allows franchisees to conduct business using its brand name, so long as certain standards are met, and makes available training and other resources, but has no role in recruiting, hiring, firing, or supervising Mountain View employees like

---

[1] As plaintiff has dismissed any claims against Mountain View with prejudice, Mountain View's pending motion to dismiss (ECF No. 5) will be **DENIED as moot.**

3

Wright. Thus, it lacks the control necessary to be considered a joint employer under Butler. Even if it were a joint employer, however, U.S. Lawns argues that Wright still cannot meet the 15 employee threshold requirement under Title VII, as only those directly employed by Mountain View and jointly employed by Mountain View and U.S. Lawns can be aggregated to meet this numerosity requirement. Because Mountain View employed only 6 to 7 employees during the relevant period and none of U.S. Lawns' approximately 56 employees were jointly employed by Mountain View, Wright's claim still fails according to U.S. Lawns. U.S. Lawns further maintains that it and its franchisee Mountain View do not constitute a single, integrated enterprise for purposes of the Title VII statutory scheme and, therefore, Wright's claims against it should be dismissed.

## II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

If matters outside of the pleadings are presented in connection with a Rule 12(b)(6) motion and are not excluded by the court, the motion must be treated as a motion for summary judgment pursuant to Rule 56. See Fed. R. Civ. P. 12(d). Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). In making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law.

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S Ct. 1861, 1863 (2014) (per curiam)). However, the non-moving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the non[-]moving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the Court must determine that no reasonable jury could find for the non[-]moving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (citing Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir. 1990)).

### III.

U.S. Lawns can be held liable in this Title VII action only if it is Wright's statutory employer. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has

5

fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. . . ." 42 U.S.C.A. § 2000e. Wright alleges that U.S. Lawns and Mountain View were her "joint employers" and collectively meet the numerosity requirement of § 2000e. The Fourth Circuit recently determined that multiple entities may simultaneously be considered employers for purposes of Title VII.[2] In Butler v. Drive Automotive Industries of America, Inc., 793 F.3d 404 (4th Cir. 2015), the court expressly adopted the joint employment doctrine and made it the law of this Circuit.

> "The basis for the finding that two companies are 'joint employers' is that 'one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" Torres–Negrón v. Merck & Co., 488 F.3d 34, 40 n.6 (1st Cir. 2007) (quoting Rivas v. Federación de Asociaciones Pecuarias de P.R., 929 F.2d 814, 820 n.17 (1st Cir. 1991)).

Id. at 408-09.

The Fourth Circuit articulated certain factors courts should consider in determining whether an individual is jointly employed by two or more entities. These factors are derived from a hybrid test used to resolve analogous but legally distinct employee status issues in Title VII cases, see Haavistola v. Community Fire Co. of Rising Sun, Inc., 6 F.3d 211, 219 (4th Cir. 1993); see also Garrett v. Phillips Mills, Inc., 721 F.2d 979, 981 (4th Cir. 1983) (applying hybrid test in ADEA context), but have been tailored to "adequately capture the unique circumstances of joint employment" in this context. Butler, 793 F.3d at 414. They are:

> (1) authority to hire and fire the individual; (2) day-to-day supervision of the individual, including employee discipline; (3) whether the putative employer furnishes the equipment used and the place of work; (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and

---

[2] The Fourth Circuit has not addressed whether the joint employment theory permits aggregation of employees to meet the employee threshold for Title VII liability. The court need not reach the aggregation issue, however, because it finds U.S. Lawns and Mountain View are not joint employers, as explained herein.

6

>  taxes; (5) the length of time during which the individual has worked
>  for the putative employer; (6) whether the putative employer
>  provides the individual with formal or informal training; (7) whether
>  the individual's duties are akin to a regular employee's duties; (8)
>  whether the individual is assigned solely to the putative employer;
>  and (9) whether the individual and putative employer intended to
>  enter into an employment relationship.

Id. None of the factors is dispositive, but the "common-law element of control remains the 'principal guidepost' in the analysis." Id. Additionally, the Fourth Circuit identified three factors as being the most important:

>  The first factor, which entity or entities have the power to hire and
>  fire the putative employee, is important to determining ultimate
>  control. The second factor, to what extent the employee is
>  supervised, is useful for determining the day-to-day, practical control
>  of the employee. The third factor, where and how the work takes
>  place, is valuable for determining how similar the work functions are
>  compared to those of an ordinary employee.

Id. at 414-15.

As regards the first factor, authority to hire and fire, there is no evidence whatsoever to suggest that U.S. Lawns had the authority to hire and fire Wright. See Dolan Decl., ECF No. 10-1, at ¶ 4; Dolan Dep., ECF No. 37-14, at 11-12; see also Def.'s Resp. to Interrog., ECF No. 37-1, at 10. Nor did U.S. Lawns provide any human resource management services to Mountain View during the relevant period. Def.'s Resp. to Interrog., ECF No. 37-1, at 11. Indeed, the evidence makes clear it was Mountain View's partners[3] who made employment decisions concerning Wright. See Border Dep., ECF No. 37-2, at 17-18. This first factor militates against a finding of joint employment.

The second factor, day-to-day supervision, including employee discipline, also weighs in U.S. Lawn's favor. Pam Dolan, Business Management Director for U.S. Lawns, states that it was

---

[3] Jess Border was the sole owner of Mountain View until June 2014, at which time he transferred a portion of his ownership interest to Bill Turley, David Cichocki, and Terry Myles, retaining a 45% interest for himself. See Border Dep., ECF No. 37-2, at 11; Change of Ownership Agreement, ECF No. 39, at 60-63.

Mountain View, not U.S. Lawns, that supervised and disciplined Wright. Dolan Decl., ECF No. 10-1, at ¶¶ 4, 6. Wright's personnel records reflecting disciplinary action and, ultimately, discharge for insubordination, appear to be signed by Mountain View partner Terry Myles. Three of these records explicitly list "Mountain View Lawn Care, LLC dba U.S. Lawns of Roanoke" as the employer; the other forms state at the bottom: "This U.S. Lawns 'Franchise' is an independently owned and operated enterprise and is a separate and distinct entity from the U.S. Lawns 'Franchisor'." ECF No. 38-3. There is no evidence that U.S. Lawns played any role whatsoever in Wright's supervision or discipline.[4]

The third Butler factor requires the court to consider whether the putative employer furnishes the equipment used and the place of work. U.S. Lawns does neither. The Franchise Agreement between U.S. Lawns and Mountain View Lawn Care, LLC requires Mountain View to purchase, acquire or lease a warehouse facility, "[l]awn mowers, edgers, garden tools, sprayers, fertilizer and other items necessary for landscape maintenance," and a service vehicle. ECF No. 39, at C-10. While the Agreement obligates Mountain View to purchase its equipment from suppliers whose products meet certain standards, and to paint its service vehicles and trailers certain colors and equip them with proper U.S. Lawns identification, see id. at C-10, C-12-15, it makes clear that U.S. Lawns did not furnish the equipment used by Wright or the place of her employment. To be sure, Wright wore a U.S. Lawns uniform, see ECF No. 37-7; see also ECF No. 39, at C-10, and the trucks and trailers she used bore the U.S. Lawns' logo, see ECF No. 37-5. But this is because Mountain View does business as U.S. Lawns of Roanoke, and the Franchise Agreement requires such branding—not because defendant U.S. Lawns actually furnished Wright's equipment. See Border Dep., ECF No. 37-2, at 28, 30, 32. Additionally, Wright worked alongside Mountain View

---

[4] On brief, Wright points out that the Franchise Agreement requires Mountain View's business "to be under the direct full-time supervision" of someone trained by U.S. Lawns, see ECF No. 39, at C-13, and requires Mountain View's officers, directors and partners to sign non-compete agreements, id. at C-32. See Pl.'s Suppl. Br., ECF No. 37, at 11. This does not bear on the question of whether U.S. Lawns had supervisory authority over Wright.

8

employees and for Mountain View's customers. Thus, none of the first three Butler factors, identified as most important by the Fourth Circuit, militate in favor of finding U.S. Lawns and Mountain View jointly employed Wright.

Nor do the remaining Butler factors. The fourth factor requires the court to consider the possession of and responsibility over Wright's employment records, including payroll, insurance, and taxes. As set forth in its interrogatory answers, U.S. Lawns has in its possession no personnel records, emails, employee handbooks, job descriptions, or Virginia Employment Commission records concerning Wright's employment. Def.'s Resp. to Interrog., ECF No. 37-1, at 4, 5. The fifth factor—the length of time during which the individual has worked for the putative employer—is of little assistance in the instant analysis, as the fundamental question to be answered is whether Wright was, in fact, ever employed by defendant U.S. Lawns, Inc. The declaration of Pam Dolan states Wright "has never been an employee of U.S. Lawns." ECF No. 10-1, at ¶ 6. Wright contends the letter of May 30, 2014, attached as an exhibit to her complaint, suggests otherwise. Compl., ECF No. 1, at Ex. 1. To be sure, this letter is written on U.S. Lawns letterhead; it states "Lisa Wright has been employed with U.S. lawns since 2/25/14" and that "[t]here is a career and future for Lisa here at U.S. Lawns. " Id. As previously discussed, however, the Franchise Agreement requires that Mountain View conduct business as U.S. Lawns. This letter does not evince an employment relationship with defendant U.S. Lawns, Inc., and the fifth factor is, at best, neutral.

The sixth factor requires the court to consider whether the putative employer provides the individual with formal or informal training. The Franchise Agreement states that U.S. Lawns will provide materials for purchase for Mountain View's use in employee training, and "[h]old periodic training and information conferences covering various business topics in the area of sales techniques, personnel, operational and technical issues as well as general business management," for which the franchisee is responsible for payment of travel expenses. ECF No. 39, at C-9. The

9

training offered, however, appears to be geared toward the franchisee -- not the individual employees. See Dolan Dep., ECF No. 37-14, at 10, 13-14. In any event, Jess Border testified that U.S. Lawns has not provided any training to Mountain View or its employees, ECF No. 38-2, at 33, and there is no evidence to the contrary. Thus, this factor also militates against a finding of joint employment.

The seventh factor asks whether Wright's duties are akin to a regular employee's duties. They are not. Wright worked as a landscaper for Mountain View. U.S. Lawns is a franchisor whose employees[5] handle strategic accounts, serves as regional franchise advisors, and otherwise work at the corporate office. Dolan Dep., ECF No. 37-14, at 8-9. Wright did not perform the same tasks as U.S. Lawns' employees. Nor was she assigned solely to the putative employer (factor 8). The fact that Wright wore a U.S. Lawns uniform, drove a truck with a U.S. Lawns logo, and received correspondence from her employer on U.S. Lawns letterhead is not indicative of joint employment in circumstances such as these, where Mountain View is required to do business as "U.S. Lawns" under the terms of the Franchise Agreement and use the U.S. Lawn mark "as the sole identification of [its] business." ECF No. 39, at C-16; see also Border Dep., ECF No. 37-2, at 28. Finally, while Wright attests that she understood that she was going to work for U.S. Lawns, "a large, reputable company," Wright Decl., ECF No. 37-15, there is no evidence to suggest that U.S. Lawns intended to enter into an employment relationship with Wright. In any event, as the Fourth Circuit recognized in Butler, this ninth factor is of minimal value:

> We pause to note that the ninth factor regarding the subjective intentions of the parties ordinarily will be of minimal consequence in the joint employment analysis. For example, the fact that an employee signs a form disclaiming an employment relationship will not defeat a finding of joint employment. Similarly, an individual's failure to appreciate an entity as an employer should not be

---

[5] Pam Dolan testified that U.S. Lawns had 56 such employees during the relevant period. This number was reduced to 24 after U.S. Lawns' strategic account work was acquired by Brickman Facility Solutions in May 2015. Dolan Dep., ECF No. 37-14, at 8-9.

> dispositive. Instead, the intent of the parties should be part of the overall fact-specific inquiry into the putative employee's circumstances.

793 F.3d at 414 n.12.

Wright focuses her argument on brief on the amount of control U.S. Lawns maintains over Mountain View, its franchisee. But this is not the relevant inquiry in the joint employment analysis. Joint employers for purposes of Title VII liability are two or more independent entities that "'share or co-determine those matters governing the essential terms and conditions of employment,'" and "'exercise significant control over the same employees.'" Butler, 793 F.3d at 408. Thus, the "principal guidepost" of the analysis is the extent to which the putative employer controls the individual employee. Id. at 410-11, 414.

The Fourth Circuit's analysis in Butler is instructive. Brenda Butler was hired by ResourceMFG, a temporary employment agency, to work at Drive Automotive Industries, a company that manufactures automotive parts.

> Drive and ResourceMFG each exercised control over various aspects of Butler's employment. For example, Butler wore ResourceMFG's uniform, was paid by ResourceMFG, and parked in a special ResourceMFG lot. ResourceMFG also had ultimate responsibility for issues related to discipline and termination. Drive, however, determined Butler's work schedule and arranged portions of Butler's training. Drive employees supervised Butler while she worked on the factory floor. Butler said she was told by ResourceMFG that she worked for "both" Drive and ResourceMFG. J.A. 36–37 ("They always told me that both of them w[ere] our employers.... [W]e w[ere] considered to be working for both.").

793 F.3d 404, 406-07. In a Title VII action brought by Butler against both ResourceMFG and Drive, the parties did not dispute that Butler worked for ResourceMFG; the only question on appeal was whether she also was employed by Drive for purposes of Title VII liability. Id. at 408. Adopting the joint employment theory and applying a hybrid test, the Fourth Circuit concluded that both Drive and ResourcesMFG were Butler's joint employers:

11

> Most importantly, Drive exhibited a high degree of control over the terms of Butler's employment (factor 1).... Although ResourceMFG was the entity that formally fired Butler, Drive had effective control over Butler's employment. Charlie Sanders, the ResourceMFG branch manager in Greenville, South Carolina, could not recall an instance when Drive requested an ResourceMFG employee to be disciplined or terminated and it was not done. J.A. 330–31.
>
> Second, Drive employees supervised both sets of workers (factor 2). Indeed, Drive—specifically Green and Thomas—handled the day-to-day supervision of Butler on the factory floor.
>
> Third, Drive and ResourceMFG employees worked "side by side," performed the same tasks, and used the same equipment (factor 3). J.A. 332. Although Butler wore a ResourceMFG uniform on the factory floor, there was little or no effective difference between the work performed by the two sets of employees.
>
> Fourth, Butler's labor was not tangential or peripheral to Drive. Instead, she performed the same tasks as Drive employees and produced goods that were Drive's core business (factor 7).
>
> The hybrid test, as we have articulated it, specifically aims to pierce the legal formalities of an employment relationship to determine the loci of *effective control over an employee*, while not discounting those formalities entirely. Otherwise, an employer who exercises actual control could avoid Title VII liability by hiding behind another entity....

Id. at 415 (emphasis added).

The facts in the instant case are far different than those presented in Butler. The evidence does not suggest that U.S. Lawns exerted any control over Wright's employment. As such, U.S. Lawns cannot be held liable under Title VII pursuant to the joint employment doctrine.

**IV.**

Wright argues, in the alternative, that U.S. Lawns should be held liable under the single, integrated theory of employer liability. Under this theory of liability, "several companies may be considered so interrelated that they constitute a single employer" for purposes of the Title VII statutory scheme. Hukill v. Auto Car, Inc., 192 F.3d 437, 442 (4th Cir. 1999), abrogated on other grounds by Arbaugh v. Y&H Corp., 546 U.S. 500 (2006). "There is well-established authority under

12

this theory that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005) (citing Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240-41 (3d Cir. 1995)).

"This theory is typically used against companies who share either a parent-subsidiary or franchisor-franchisee relationship." Riddle v. Greenville Transit Auth., No. 6:05-2617-HMH-BHH, 2006 WL 1328234, at *5 (D.S.C. May 12, 2006); accord McGee-Fuller v. Greenville Transit Authority, No. 6:05-2616-HMH-BHH, 2006 WL 1328253, at *4 (D.S.C. May 12, 2006); see also Butler, 793 F.3d at 408 n.3 (quoting Murphy-Taylor v. Hoffman, 968 F. Supp.2d 693, 725 (D. Md. 2013)). The existence of a parent-subsidiary or franchisor-franchisee relationship, however, "'is not sufficient, as a matter of law, to impute liability to [the parent/franchisor] for the alleged discriminatory actions of its subsidiary[/franchisee].'" United States v. Universal Health Servs., Inc., No. 1:07CV00054, 2010 WL 4323082, at *6 (W.D. Va. Oct. 31, 2010) (quoting Gordon v. Fort Mill Ford, Inc., No. 0:07-992-CMC-JRM, 2009 WL 792501, at *8 (D.S.C. Mar. 23, 2009)). Rather, the Fourth Circuit has articulated a non-exhaustive, four-prong test to determine whether two employers should be considered a single employer for purposes of Title VII liability: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." Hukill, 192 F.3d at 442. No single factor is conclusive; however, "control of labor operations is the most critical factor." Id. (citing Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761, 764 (5th Cir. 1997) (recognizing that control of labor relations prong has traditionally been the most important)).

The district court in Thomas v. Bet Sound-Stage Restaurant/BrettCo, Inc., 61 F. Supp. 2d 448 (D. Md. 1999), expounded on the Hukill factors as follows:

> In applying the integrated enterprise test, courts have noted the following to be probative evidence that one company employs the other's employees for purposes of Title VII liability: (1) one company's employees hired and fired the other's employees and/or authorized lay offs, recalls, and promotions of such employees, see Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241 (2d Cir. 1995); Frank, 3 F.3d at 1362; Johnson, 814 F.2d at 981; Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983); (2) one company routinely transferred employees between it and the other company, used the same work force, and/or handled the other's payroll, see Johnson, 814 F.2d at 981; Armbruster v. Quinn, 711 F.2d 1332, 1338 (6th Cir. 1983); (3) one company exercises more than general oversight of the other's operations by supervising the other's daily operations, such as production, distribution, purchasing, marketing, advertising, and accounts receivable, see Cook, 69 F.3d at 1241; Johnson, 814 F.2d at 981–82; Armbruster, 711 F.2d at 1338; (4) the companies have common management in the form of interlocking boards of directors and/or common officers and managers. See Frank, 3 F.3d at 1364; Johnson, 814 F.2d at 982; (5) the companies fail to observe basic formalities like keeping separate books and holding separate shareholder and board meetings, see Johnson, 814 F.2d at 981; (6) the companies fail to maintain separate bank accounts, see Johnson, 814 F.2d at 982; (7) the companies file joint tax returns. See Johnson, 814 F.2d at 982.

Id. at 456; accord Tasciyan v. Med. Numerics, 820 F. Supp. 2d 664, 672 (D. Md. 2011); Glunt v. GES Exposition Servs., Inc., 123 F. Supp. 2d 847, 874 (D. Md. 2000).

Applying the Hukill factors to the instant case leads the court to conclude that U.S. Lawns and Mountain View are not a single, integrated employer. The first and second factors – common management and interrelation between operations—both consider whether a common manager runs day-to-day operations and has the authority to hire and fire employees or transfer them between locations. See Gilbert v. Freshbikes, 32 F. Supp. 3d 594, 603 (D. Md. 2014). U.S. Lawns and Mountain View do not share common management. Jess Border ran day-to-day operations and made decisions about whether to hire or fire employees prior to June 2014; after Border sold a portion of his ownership interest in the franchise, Terry Myles became the general manager of

14

Mountain View. See Border Dep., ECF No. 37-2, at 17-18, 23; Dolan Dep., ECF No. 37-14, at 11-12. While the evidence establishes that U.S. Lawns provided franchise support to and set certain franchise standards for Mountain View, there is no suggestion that U.S. Lawns had any control over the franchisee's day-to-day operations or played a role in its employment decisions. See Dolan Decl., ECF No. 10-1, at ¶ 4; Dolan Dep., ECF No. 37-14, at 11-12; Def.'s Resp. to Interrog., ECF No. 37-1, at 10-11. Nor is there evidence that employees were routinely shifted between U.S. Lawns and Mountain View. The fact that Jess Border's Mountain View partners Terry Myles, Bill Turley and David Cichocki all had previous connections to U.S. Lawns[6] is of no moment in this analysis. As Border testified, he met Myles "because [Myles] was looking for a job and we hired him," id. at 19—not because there was the kind of transfer of employees between franchisor and franchisee suggestive of control over employment practices and indicative of an integrated enterprise. See Johnson v. Flowers Indust., Inc., 814 F.2d 978, 981 (4th Cir. 1987).

As discussed previously, U.S. Lawns does not control Mountain View's employment decisions. See Gilbert, 32 F. Supp. 3d at 603 (third factor is shown "when a single party controls employment decisions across multiple corporations"). And there is no common ownership between U.S. Lawns and Mountain View. U.S. Lawns is a wholly-owned subsidiary of Valley Crest Group, which merged with The Brickman Company in June 2014. See Dolan Dep., ECF No. 37-14, at 7-8. Mountain View is a limited liability company owned by Border, Turley, Myles and Cichocki. See Border Dep., ECF No. 37-2, at 11; Change of Ownership Agreement, ECF No. 39, at 60-63. There is no relationship between U.S. Lawns' parent companies, Valley Crest and Brickman, and Mountain View. Border Dep., ECF No. 37-2, at 28. The evidence establishes that U.S. Lawns and Mountain View "are entirely separate and unrelated entities. They file separate tax returns, conduct separate banking operations and operate and maintain offices at separate locations." Dolan Decl., ECF No.

---

[6] Myles was a manager for a South Carolina U.S. Lawns franchise, Border Dep., ECF No. 37-2, at 18-19; Turley was "an advisor," id. at 21; and Cichocki was a U.S. Lawns franchisee in Connecticut, id. at 23.

15

10-1, at ¶ 7; see also Def.'s Resp. to Interrog., ECF No. 37-1, at 6-7. This is not a case in which the two entities are so interrelated that they share common ownership, financial control, centralized management and, importantly, control over labor relations, such that they are considered a single, integrated employer for purposes of Title VII liability. Cf. Matthews v. Novant Health, Inc., No. 3:09CV494, RJC-DSC, 2010 WL 2131559, at *4 (W.D.N.C. Apr. 29, 2010) (finding defendants to be integrated employer in FMLA case where undisputed evidence showed that "[d]efendants share common ownership, financial control and centralized management, including centralized human resources management."), adopted in 2010 WL 2131775 (W.D.N.C. May 25, 2010).

## V.

Finally, Wright argues that U.S. Lawns created an apparent agency relationship with Mountain View such that Wright believed U.S. Lawns controlled the operation of the business. Wright cites the Fourth Circuit opinion in Crinkley v. Holiday Inns, Inc., 844 F.2d 156 (4th Cir. 1988), a case arising out of North Carolina. In Crinkley, a jury found Holiday Inns liable for personal injuries sustained by plaintiffs as a result of an assault and robbery that took place while they were staying as guests on the motel premises. Alleging negligence in the form of inadequate security, plaintiffs brought suit against several defendants associated with the motel, including Travelers Management Corporation (TRAVCO), the entity in day-to-day operational control of the motel, which was managed under a franchise agreement with Holiday Inns. Plaintiffs also sued Holiday Inns under an actual authority or, alternatively, apparent agency theory, arguing the franchise agreement gave Holiday Inns the right to control certain aspects of the motel's operations. 844 F.2d at 159.

On appeal, Holiday Inns argued the district court erred in submitting the claims against it to the jury on a theory of apparent agency, after the court held evidence would not support a finding of actual agency. The Fourth Circuit clarified that the issue submitted to the jury was agency by

16

estoppel—"whether TRAVCO had the power to bind Holiday Inns by virtue of its appearance as Holiday Inns' agent." Id. at 166. The court identified two elements that must be proven to establish liability based on apparent agency: "(1) the alleged principal has represented or permitted it to be represented that the party dealing directly with the plaintiff is its agent, and (2) the plaintiff, in reliance on such representations, has dealt with the supposed agent," meaning plaintiff changed his position to his detriment. Id. (citing Fike v. Bd. of Trustees, 53 N.C. App. 78, 279 S.E.2d 910, 912 (1981), and Restatement (Second) of Agency § 267 (1958)). Citing the terms of the franchise agreement, national advertising, and a publicly available directory containing a list of all Holiday Inns properties, which did not distinguish between company-owned and franchised properties, the Fourth Circuit held that "a jury could reasonably conclude that the Holiday Inn-Concord was operated in such a way as to create the appearance that it was owned by Holiday Inns, Inc. and that this was one of the purposes of the franchise agreement." Id. at 167. Although evidence of actual reliance by the Crinkleys was marginal, the Fourth Circuit held it was enough to raise a jury issue under an apparent agency theory. Id.

Unlike the instant case, Crinkley involved tort liability. The plaintiffs in Crinkley sought to hold Holiday Inns vicariously liable for their personal injuries caused by alleged negligence. Here, in contrast, Wright alleges sexual harassment and gender discrimination. In order to hold U.S. Lawns liable, Wright must show that it meets the statutory definition of "employer" under Title VII. See Gray v. McDonald's USA, LLC, 874 F. Supp. 2d 743, 751 (W.D. Tenn. 2012) (distinguishing Crinkley and other tort cases relying on apparent agency theory from employment case in which plaintiff must show defendant is statutory employer).

Wright points to one district court decision, Miller v. D.F. Zee's, Inc., 31 F. Supp. 2d 792, 805 (D. Or. 1998), in which the court determined there was a triable issue of fact in a Title VII case as to whether Denny's, the franchisor, could be vicariously liable for the actions of employees of its

17

franchisee under an apparent agency theory. Miller, of course, is not precedential authority and it relies on Oregon agency law. In Virginia, "[t]he apparent agency relationship is not easily established, even in circumstances where the alleged apparent agent seems closely connected to the principal." Giordano v. Atria Assisted Living, Virginia Beach, LLC, 429 F. Supp. 2d 732 (E.D. Va. 2006). Indeed, an apparent agency theory, or agency by estoppels, "has never been used in Virginia to impose vicarious liability on an employee for the negligent acts of an independent contractor." Sanchez v. Medicorp Health Sys., 270 Va. 299, 308, 618 S.E.2d 331, 335 (2005). In fact, "[t]he Supreme Court of Virginia has never endorsed this theory as a basis of tort liability." Saiyed v. Council on Am.-Islamic Relations Action Network, 78 F. Supp. 3d 465, 476 (D.D.C. 2015). Wright points to no authority that persuades the court it should apply an apparent agency theory to this Title VII case.

Assuming such a theory were applicable in this context, Wright has not proved the existence of an apparent agency relationship. See Saffold v. Conway & Associates, Inc., 66 Va. Cir. 179 (2004) ("In order to establish apparent agency the burden of proof is upon the party dealing with the agent to establish the agency by clear and convincing evidence."). There is no factual basis upon which Wright could recover, as there is no evidence to suggest Wright relied on the U.S. Lawns mark. See Gibson v. Medical Facilities of Am., Inc., 79 Va. Cir. 329 (2009) (apparent agency requires (1) appearance of agency, (2) acquiescence by the principal, and (3) reasonable reliance by a third party); see also Restatement (Second) of Agency § 267 (1958). The Fourth Circuit in Crinkley distinguished the case of Hayman v. Ramada Inn, Inc., 86 N.C. App. 274, 357 S.E.2d 394 (1997), rev. in part, 320 N.C. 631, 360 S.E.2d 87 (1987), which rejected a comparable apparent agency theory involving a motel franchisor, because in Hayman, the motel guest was required by her employer to stay at the franchised motel. 844 F.2d at 167 n.3. In contrast, the Crinkleys "were exercising free choice so that their reliance on the franchisor's representations as the controlling factor in this choice was

18

reasonably inferrable as a matter of fact." Id. There is no evidence of similar reliance by Wright in the instant case. Wright states in her declaration that she believed "when [she] went to work for U.S. Lawns that [she] was going to work for a large, reputable company" and would be part of "the 'U.S. Lawns family.'" Wright Decl., ECF No. 37-15, at ¶ 2-3. "Awareness, however, is not the same as reliance." Josefson v. AMR Corp., No. CIV. 1:95CV00493, 1998 WL 34366609, at *4 (M.D.N.C. Apr. 23, 1998). Wright presents no evidence that she accepted this job because she believed she was working for defendant U.S. Lawns. See, e.g., Case v. Holiday Inns, Inc., 851 F.2d 356 (4th Cir. 1988) (unpublished table decision) (finding no material question of apparent agency under North Carolina law where "[t]here [was] not the slightest evidence that [plaintiff] Case would have refused to stay at the Inn had she known it was not owned and operated by Holiday Inn."); DiFederico v. Marriott Int'l, Inc., ___ F. Supp. 3d ___, 2015 WL 5516843, at *7 (D. Md. Sept. 18, 2015) (the absence of proven reliance on franchisor's mark is fatal to apparent agency theory, applying Maryland law); Josefson, 1998 WL 34366609, at *4 ("It is therefore speculative to infer that Mrs. Josefson flew on Flight 3379 because its crew appeared to be agents or employees of American Airlines," noting North Carolina law requires plaintiff prove that the dealt with an apparent agent *because of* the defendant's representations).

Unlike in Miller, there is evidence that should have made Wright aware that the lawn care company which employed her was an independently owned franchise. Cf. Miller, 31 F. Supp. 2d at 808 (noting evidence showed no indication in the restaurant that it was owned by a franchisee and that servers were told they were Denny's employees). Wright's personnel records either expressly list "Mountain View Lawn Care, LLC dba U.S. Lawns of Roanoke" as the employer or state at the bottom: "This U.S. Lawns 'Franchise' is an independently owned and operated enterprise and is a

19

separate and distinct entity from the U.S. Lawns 'Franchisor'."[7] ECF No. 38-3. Wright's pay stub also lists "Mountain View Lawn Care LLC" in addition to "US Lawns." ECF No. 38-3, at 0273.

In sum, the court finds there no triable issue of fact as to whether U.S. Lawns can be held liable in this Title VII case under an apparent agency theory.

## VI.

For the reasons set forth above, Wright has failed to establish that U.S. Lawns is her statutory employer under Title VII. Accordingly, U.S. Lawns' motion to dismiss, which the court converts to a motion for summary judgment, will be **GRANTED** and Wright's claims against U.S. Lawns **DISMISSED**.

An appropriate Order will be entered.

Entered: March 11, 2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[7] The court notes, however, that Wright's signature does not appear on any of these personnel records and some explicitly state that she "refused to sign." ECF No. 38-3.